Our next case is Biomedical Patent v. State of California Mr. Dewey Judge Rader, may I please the court? In this matter, the State of California voluntarily appeared in federal court and asserted claims against BPMC, the patent owner. In seeking to intervene, the State asserted that jurisdiction and venue were proper, and it strenuously argued that it needed to obtain from BPMC all of the disclosures and contentions that are required under the local patent. Those include claim construction contentions, infringement analysis, and thousands of documents. The court accepted the State's intervention. That was all dismissed? Yes. Didn't it disappear? Are we able to pay any attention to that after dismissal? Absolutely, Your Honor. The dismissal is of no significance. As this court observed just two weeks ago in VASCAP, the focus must be on, in the waiver analysis, on the litigation act of the State creating waiver. Focusing on something as insignificant as a dismissal without prejudice for venue would divert the focus from where it should be. The trouble is in VASCAP, we had a statute which actually incorporated into the interference proceeding an appeal, the appeal being part of that interference proceeding by statute. And therefore, the court could look to the intervention in the proceeding entailing an intervention in sense in the appeal as well, and therefore, waiving for the entire process the 11th Amendment. Is there a similar analogy here? Doesn't the dismissal cut things off instead of perpetuating that waiver? I don't think so, Your Honor. And I think that the case that speaks to this most clearly is Gunter v. Atlantic Coastline. In Gunter, there were two actions separated in time by 25 years. In the second action, the Supreme Court held that the waiver of state immunity occurred in the earlier action, the Pegues case, 25 years earlier. The key was that it was the same cause. But that was in 1906, though, wasn't it? Isn't the law changed with respect to the 11th Amendment at this point? Not in the slightest. In Lapidus, 2002, the court wholeheartedly embraced the rules of Gunter and Gardner and Clark. But there was a waiver under the Georgia statute in Lapidus. Well, right. That's a different situation. I'm referring back to the Gunter situation. I know I'm not saying that Lapidus is completely analogous, but in response to the presiding judge's question, what about the situation where you have different actions? That was present in Gunter, and Gunter was— But the second action was enforcing the judgment in the first. But actually, Your Honor, I think that hits on the key problem here of the way the district court looked at Gunter. Gunter is an alternative holding case. The Supreme Court in 2C, the New York Life Insurance, 1941, dealt with the res judicata aspect of Gunter in a case that had nothing to do with the 11th Amendment jurisprudence. And the majority of the dissent were arguing about that very aspect of the court's ability to enforce its decrees in a later action. And the dissent specifically referred to Gunter as a case that had alternative holdings. The alternative holdings are that the 11th Amendment waiver analysis, the language we've seen so many times, voluntarily becoming party to a cause and submitting your rights for judicial determination, and then the res judicata aspect of it served as additional support for the court to reach the result. And the Supreme Court in Gunter cited three existing cases for the proposition that the court, of course, has the ability to enforce its decrees in later action. Lapidus didn't deal with anything about that relitigation res judicata aspect of Gunter. Lapidus embraced the 11th Amendment analysis. But it wasn't—even Gunter wasn't broad enough to adopt this subject matter proposal that you have. In other words, you're saying if they waive as to essentially a subject matter, that it's waived forever regardless of where you sue or when you sue. Well, not where you sue, of course, because that gets into a venue issue, and then we get into Pennhurst and Feeney and this court's application of those decisions in teacher communications. But as far as the ability of the state to forever say, we don't care what the district is, you're never coming back into court on this matter, well, that's definitely ruled out by Gunter. And Lapidus—Lapidus Court referred to the rule of—the rule of the Lapidus Court was a waiver applies to the matter. They chose that word, I think, very carefully. They know the difference between the words matter and action. Matter, of course, refers to the substance of the dispute. And here, that is simply whether the state's prenatal screening program infringes the patent and sue. And that reading of matter, to me, what the Supreme Court—to give meaning to the Supreme Court's term, is fully consistent with the no backtracking aspect of Lapidus. Citing at page 621 the idea that it's—the ALA article for the proposition that it's unfair for someone to invoke federal court jurisdiction and subsequently challenge that jurisdiction. And that's exactly— No, no, no, but in Lapidus, though, you had a waiver under the statute. The Georgia statute waived for torts actions the state's immunity. Right. And then they transferred it to federal court. They transferred it to federal court. Then the state asked for its 11th Amendment immunity. And the Supreme Court said, no, you can't do that because you already waived it under the statute. The Georgia statute waived the 11th Amendment immunity. Exactly. In other words, the state could not backtrack on its previous immunity decision. And that's how the Fourth Circuit and Stewart, a case that the state suggests this court should follow, that that's exactly the analysis of the Fourth Circuit and Stewart. No backtracking on your previous abandonment of sovereign immunity. But that was under a statute, not under an action that was filed three years before which was subsequently dismissed under your motion for a change of venue, for improper venue. But that difference would only make the waiver even more compelling because this waiver occurred by the very invocation of federal court jurisdiction. So what you're alleging then, if I understand your theory correctly, is once a state waives its sovereign immunity in any action relating to that party, it waives it forever. I could qualify that by saying that where the state voluntarily invokes federal court jurisdiction, yes, it's a one-way street on that matter. And there's not one case to the contrary. If you look back, all the way back to Clark v. Bernard, the country. The city of South Pasadena. South Pasadena. That was not a voluntary invocation case. And as Lapidus makes clear at 622, the rules are different when the state is in court involuntarily. That case was brought against the state. Well, the state was not in court involuntarily in Georgia, in Lapidus' case, because they already had waived it for state court purposes. The waiver was already effected by the state statute. We don't have that same waiver here by statute. What you're saying is there's an implied waiver by the state's actions in participating in the first action. Well, not implied waiver. It's an express waiver. It's an implied waiver. Well, expressly said. For the second suit. Oh, for the second suit. Well, I'm not saying it's implied. In the third suit. I'm not saying it's implied in the next action. I'm saying that they can't nullify it. It was an express waiver in the earlier action, and nothing nullifies that is what I'm saying, Your Honor. But getting back to the presiding judge's question, the city of South Pasadena, that's a critical difference. It was brought into court involuntarily. And even if we accept some applicability to that decision, it's impossible to square the reasoning of that Ninth Circuit decision with Lapidus, which was decided two months later. Because as you recall, Judge Rader, in the city of South Pasadena, they give absolutely no consideration to any fairness aspect or consistency aspect of the state's litigation conduct. That is absolutely required under Lapidus. Instead, the Ninth Circuit, and this is the Ninth Circuit's term, they slavishly applied this nullity rule that has nothing to do with Eleventh Amendment jurisprudence. Well, we judges use the term matter all the time. And when we refer to the term matter, we refer to a pending matter. And even in Gunter, what they were talking about is an enforcement of a decision in a pending matter. So it was not a situation in which the matter never got resolved like yours. You chose to dismiss it. In fact, you chose to dismiss it twice, and now you're bringing it back up. So when you're referring to matter as subject matter, the general dispute, we refer to matter as pending litigation. Well, but look at the way the First Circuit in Ramsey applied Gunter. The First Circuit in Ramsey said that the state had submitted its rights for judicial termination, and they applied Gunter. In the first federal action in Ramsey, there was no adjudication on the merits. That was dismissed without prejudice right out of the gate. But it was dismissed without prejudice because the state itself argued that you needed to go to the administrative remedy first. And then the state voluntarily participated in that. That is more akin to this court's decision that says when you submit to the process, you submit to the whole process, even if it ends up in court. But we can't use the district court's nullity rule there because if we use that with respect to the dismissal without prejudice, then that very invocation of administrative procedures becomes a nullity, and we pretend it never happened under the district court's ruling here. No, I don't understand that analogy. The reality is that one was dismissed, and then the state voluntarily participated in an administrative process that inevitably led to another court proceeding. You don't even—the first action is essentially meaningless in that instance. Well, Murmanow, in Ramsey, there was a key distinction between the state's defensive participation in those proceedings, and that by itself was insufficient for waiver according to the First Circuit. It was only because of the positions and omissions that the state took in that first action that was dismissed without prejudice that made the difference. Well, what the court focused on was the state's voluntarily participation in an administrative process for over two years. But that wasn't the focus of the waiver. Very much like the participation in the PTO process. But remember that when it came to money damages, the state's defensive participation was insufficient by itself in Ramsey to effect a waiver. It was only the prospect of economic relief that the waiver applied to, and that's because of the positions and omissions that the state took in the first action. I'm getting low on time, and if I could just mention, with respect to the state's overall patent litigation conduct, the record is replete with the number of times the state has voluntarily invoked this court's jurisdiction and the district court's patent jurisdiction, and this is probably the last time this court will be able to weigh in on this issue before it's gone forever. I think the principles of Lapidus require there to be an analysis of the fairness and consistency of the overall approach the state takes to the federal courts in patent cases. Well, you can't waive sovereign immunity by equitable remedies, can you? How can you waive the Eleventh Amendment's sovereign immunity protections by equitable changes? Because it's voluntary litigation conduct, Your Honor, and Lapidus shows that we don't care about the state's preferences, intentions, motives. We look to their conduct, and that conduct is on such a grand scale, I don't know that there's any private entity that even compares to it. I don't think Lapidus really helps you because of the waiver in the statute, the state statute of state sovereign immunity. There's no such waiver here under any statute. Well, not by statute, but of course statutes are not the only way a state can waive its sovereign immunity. It can do so by its voluntary invocation in federal court jurisdiction. Of participation, voluntarily, right? Yes. They're not voluntary here, are they? Well, they certainly were when they voluntarily brought this matter to the federal courts, and the only question is whether they can nullify that based on their own violation of the venue statutes, which under Van Nusen v. Barrack are fairness rules. So in other words, the state is using its own violation of a fairness rule to nullify. And again, there's no precedent, none, not a single case for the idea that the state can later nullify its waiver after it has voluntarily invoked federal court jurisdiction. Not a single case to the contrary. Did you move to transfer venue or an alternative dismiss, or did you just move to dismiss? We just moved to dismiss. As you know, you can't transfer a case when there's going to be a counterclaim because then it's a case against the state. So under Penhurst and Feeney and this court's interpretation of it in Tejik, you can't transfer. And that's the key here is that you're going to be creating, if you affirm the judgment here, you're going to be creating terribly unfair tactical advantages for the state. They won't be able to sue in improper forms and never, ever have to worry about being sued again because of this nullity rule. The idea that, okay, we violated someone's personal jurisdiction rights or venue rights. That's it. It's over. And they can never be sued again. That is an unfair tactical advantage that Lapidus expressly prohibits. But I'll reserve the balance of my time here. Thank you, Mr. Duane.  Thank you, Your Honor. May it please the Court. I'd just like to remind the Court, although I think you're well aware of this, that this original case was filed in 1997. And the legal landscape regarding the state's ability to claim sovereign immunity in 1997 has dramatically changed. In 1997, the Patent and Remedy Act of 1992 was in effect. And so it could not have been clear to the State of California, the Department of Health Services, when they moved to intervene in 1997, that they actually could claim 11th Amendment immunity since it had been specifically abrogated by statute. And the decision in Florida prepaid and college savings did not come down until 1999. And there were other dramatic changes since 1997, including the fact that in 1997, the State of California could have and certainly might have believed, under the Ford Motor Company case, that they could claim sovereign immunity at any time. But, Ms. King, I have a problem with it. Because basically, in 1997, you did file, the State did file a motion to intervene in the original action. If that case had just been stayed pending the outcome of the Florida prepaid, and then after Florida prepaid, you had filed your motion to dismiss at that point in time, after you had voluntarily submitted to jurisdiction of the federal court, you would have waived your 11th Amendment right. Is that correct? Well, we may have waived our 11th Amendment immunity to the federal forum, Your Honor, but I . . . Well, in that particular case, in that particular subject matter, so if the case had been stayed in 1997, instead of taking the circuitous route of going to the Southern District and then coming back up to the Northern District, you couldn't, at that point in time, waive your 11th Amendment rights because you already had done so. Well . . . You couldn't hide behind the 11th Amendment. I make a distinction, Your Honor, between the 11th Amendment and sovereign immunity. That was clarified in the Alden v. Maine case in 1999. But didn't Alden v. Maine, didn't the Supreme Court specifically say that in Alden v. Maine, this inherent sovereign immunity that you refer to, the majority specifically says, all they're talking about is immunity in state court. They're not talking about an immunity that carries over and gives you a two-layer level of immunity in federal court. Well, I think there is existing case law that indicates that you . . . There's a difference between immunity from suit and immunity from liability. Though that difference is not spelled out in any Supreme Court decision, every Supreme Court decision, especially Alden v. Maine, specifically characterizes immunity as an immunity from suit. That distinction doesn't show up in any Supreme Court decision, does it? Well, I'm not aware of that exact language in a Supreme Court opinion. I am aware of that language in other cases. In one Fifth Circuit decision? Well, there's the Fifth Circuit decision, and I believe that distinction was raised in the First Circuit in New Hampshire v. Ramsey that they talked about the difference between . . . And I may be a little bit off about the language, but I believe that they discussed the difference, for example, between immunity from suit and immunity from liability. And it was on that basis that the court in the First Circuit in Ramsey found that the state had not waived immunity from damages. And so I think there is a distinction. And the Lapides case had not been decided when the Department of Health Services decided to move to intervene back in 1997. Well, neither had Florida Pre-Pay. And Florida Pre-Pay had not been decided, so it could not have been clear. But Seminole had been decided at that point. Seminole had. In 1996. Correct. And so I think, yes, there's an indication, possibly. I think it's a pretty clear road map as to where the Supreme Court was going under the Eleventh Amendment provisions on behalf of the states at that point in time. I think it's a clear trajectory on that basis. That may be, Your Honor. I have to say that having read the Supreme Court sovereign immunity cases over the years, I find the whole area of law incredibly confusing. Yes. But didn't Lapides itself say, this is no surprise, didn't Lapides itself say, you know, the law has been clear forever that voluntary invocation of a forum is a waiver? It's a waiver as to bringing the lawsuit in federal court. And both to liability as well as to damages. Well, I'm not sure Lapides went that far. Well, how would you waive it then? If you just waive it for liability, how would you enforce the damages? You're still trying to protect the state's treasury. Correct. But at that point in time, you've waived that protection by going in and alleging and challenging the liability. How can you enforce the liability after that? I think what you're doing is you're going in and saying to a federal court, you are the experts on the issue of sovereign immunity. Could you please decide this issue? Oh, don't look to the federal courts for expertise in that area, because I don't think that's a very clear indication of where the expertise lies. Well, it certainly doesn't lie in state court, Your Honor. I can tell you that. Excuse me. What about South Pasadena? Does that help you at all? Well, I think it helps to the extent that it indicates that a voluntary dismissal renders the original case null and void. And I'd actually like to talk here a little bit about the litigation conduct on the part of my opponent. Because what we see here, and I know that they're saying that the Department of Health Services went into court in the wrong venue. But let's remember that the Department of Health Services did not file this lawsuit. Kaiser Permanente filed the lawsuit in the Northern District, and then the Department of Health Services moved to intervene. How do we end up in the Northern District now? Well, that's a really good question, Your Honor. I think that we're back in the Northern District. There was something in my opponent's brief that last night I kept thinking, what was the significance of this statement in their brief at page 9? Circumstances. Circumstances no longer dictated that suit be resumed in San Diego. And that's probably ever since I first read it, because I didn't understand that. What I think I understand now is that they had to come back to the Northern District because Knight has language in it that says that by going into court, the state waived immunity as to any compulsory counterclaims in the same forum. And so I think they had to come back to the Northern District for it to be in the same forum. Otherwise, I can think of no explanation for why it came back to the Northern District. They fought and fought and fought about venue. But what I want to get back to is that I don't think it was so clear that venue was just blatantly improper in the Northern District, because their original motion to dismiss for lack of venue was not granted. It was not until they filed a motion for reconsideration that the court concluded that venue was improper and the case was dismissed without prejudice. And then they immediately went to the Southern District, filed another lawsuit. The Department of Health Services, as a defendant, immediately raised 11th Amendment immunity. And because of the confusion about 11th Amendment immunity and the split in the circuits at that time, and because there were petitions for certiorari pending in the Supreme Court in Florida prepaid and college savings, they moved to dismiss again. And you opposed that. Well, we opposed dismissal without prejudice for the very concern that now brings me here to this court, which is that at some point they would refile. And they waited seven years to refile the case. Ms. King, what relevance does it have that the state of California is one of the primary litigants and seeking protection continually of the patent laws and yet wishes not to be held subject to that? What relevance do you give to that? Your Honor, it's DHS's position that there is no relevance to be given to that. That the Department, there's no allegations. We in the federal court system don't consider fairness. I'm not saying the court shouldn't consider fairness, Your Honor. But I am saying that what the University of California does has nothing to do with what DHS does, what DHS did in this case. Well, you're invoking this as the state of California. Correct. We're invoking sovereignty. So the state of California has to perhaps take responsibility for all the acts of the state of California, and still you say we don't want to look at fairness in this. Well, I'm not saying that you shouldn't look at fairness, but I think one of the reasons there has been so much confusion about the doctrine of sovereign immunity is that it's not really fair. It's never been fair. It wasn't fair when the king couldn't be sued.  And so there's an underlying discrepancy between the state and private entities. But what about when the state is acting as a private entity, when the state's in business and seeking to profit from its patents, and yet doesn't want to be held liable if perchance it infringes? That doesn't bother you at all? I wouldn't be honest to say it doesn't bother me, Your Honor, but I think from a legal standpoint it is not relevant to the discussion here. The discussion here is whether or not the waiver that DHS made in 1997, I almost said 1979, carries over into a case brought many, many years later. And we can see that, taking up the question that my colleague first asked, that if there had not been a dismissal, just a continuance, you would clearly be still in court. In weighing the difference between a dismissal and a continuance, should we consider the fairness of the situation at all? It's a pretty fine little procedural glitch and glotch there. It's a very good question, Your Honor. But I still think that there is a difference between waiving forum immunity, which I think it's fairly clear, I'm willing to say it's fairly clear, DHS waived forum immunity in 1997. But I'm also prepared to say that they could not have known in 1997 when they went into federal court to intervene in a declaratory relief action that they would be subject to suit almost 10 years later after that case was dismissed and another case was dismissed and after it became clear that they had immunity in patent cases in 1999 when the Supreme Court decided for a prepay. So we've got a completely different playing field than we had in 1997. Ms. King, as a hypothetical, if instead of damages you were talking about before you said that you distinguish between liability and damages, what if the plaintiff had sued the director of the Department of Health Services in violating the patent and just tried to obtain an injunction? Did they proceed under the ex parte Young theory? I don't pretend to be an expert on that, Your Honor, but I believe that perhaps they could have. Preventing the further infringement of the patent by the director under the ex parte Young so the federal court would have jurisdiction over the individual but not the state at that point and the injunction would issue against the director. But the interesting thing in response to that question, Your Honor, is that the patent has now expired. And so that's another thing that has changed since this lawsuit was initiated back in 1997. Well, they can still seek damages for past infringement. They can seek damages, but damages are the very thing that the 11th Amendment is intended to prevent. Unless you waive it. I understand that, Your Honor, but going against the public defense. So this is just one more reason why we're not really dealing with, as plaintiffs would like to say, the same matter that we were dealing with in 1997. The character of everything in this case has changed. One question that always bothered me. Does the state of California provide for recourse of its violation of patents, an infringement of patents in state courts by the patent holder? I do not specifically know the answer to that, Your Honor. So now you have two counsel up here at their last statement saying, I don't know the answer. But I can't think of any reason why the case could not be brought in state court. I'm not aware of any reason. So there would be a waiver of the state sovereign immunity in state court for a violation of the federal patent right, and they could recover damages under that particular provision? Well, my understanding is that it pertains to the state being sued in federal court. Well, it also pertains to being sued in its own courts unless it waivers. That's correct. Hines v. Louisiana established that pretty clearly. I don't know the answer to your question, Your Honor. I'm sorry. Thank you, Ms. King. Mr. Dewey, you have a minute and a half or so. Really quick responses. The availability of a state court remedy, Judge Garris, has never been a part of a waiver analysis. That's only a part of an aggregation question because there's a potential takings issue. No, it comes up under the 14th Amendment, Section 5. Sure. Because at that point, if the state does not provide for a particular remedy, you have a Fifth Amendment problem. Sure. A 14th Amendment problem. On page 132 of the Joint Appendix, the state expressly waived sovereign immunity with respect to the counterclaim seeking money damages. So there's just no issue there. Now, regarding the idea of what's the difference between a long action that was continued and the situation we have here where there was a dismissal for improper venue. The only difference is that dismissal for improper venue. A fairness rule under Van Dusen v. Berwick. The state violated a fairness rule, and that's what it seeks to use to create the difference in the waiver. You've dismissed this more than once. You have two dismissals. You have a 41A dismissal as well. Right, but at that point, there was no sovereign immunity left for the state to waive. But just really briefly around my remaining time, Affirmance here creates two new tactical, new fair tactical advantages for the state. We have the Hobson's Choice. The state can put defendants in. They either give up on their personal jurisdiction and venue rights, or they will never have a day in federal court again. Number two, the state will have a court launch to have an unlimited number of some of the largest cases in patent history, such as the Owens case, such as Rader case. How do you end up in the Northern District right now? Actually, the counsel is correct. Under Knight, and not just Knight, it's a fairness rule to the defendant. And so we had to be fair to the defendant once we were the ones filing. And so we had to look at where the state based its program, which is in Berkeley in the Northern District. And under Penhurst and Feeney and this court's application of it in Teach-It, the state can control where it may be sued. And that's why we have the Hobson's Choice problem. You can't transfer any kind of counterclaim against the state. So when you filed in the Southern District, you were wrong? Well, we had no idea they were going to assert sovereign immunity. We said in the brief, at no point in any context in the first suit did they ever mention the 11th Amendment or sovereign immunity. It came as a complete surprise to us. Thank you, Mr. Dewey.